IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANK E. GREEN, #192084            *
                Plaintiff,
        v.                       *    CIVIL ACTION NO. JFM-14-868

CO II J. PRITTS                *
CO III J. GORDON
CO II R. RITCHIE             *
CO III CHRIST WEDLOCK
              Defendants.      *
                                *****

MEMORANDUM

Frank E. Green ("Green"), a Maryland inmate currently housed at the Western Correctional

Institution, filed this self-represented 42 U.S.C. § 1983 unverified complaint for damages against

North Branch Correctional Institution ("NBCI") correctional officers, alleging that they violated his

rights by writing a false adjustment report on him and assaulting him.  Green further contends that

defendant Wedlock began a "personal attack" on him in response to his request to obtain material

(video of the guard assault), which had been destroyed.  ECF No. 1.  Defendants have filed a motion

to dismiss or, in the alternative, for summary judgment, construed as a motion for summary judgment,

and Green has filed an opposition.  ECF Nos. 29, 31 & 32.  The matter is ripe for disposition.  For

reasons that follow, the court will grant defendants' summary judgment motion.

Summary judgment is proper when the moving party demonstrates through "particular parts

of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro,* 714 F.3d 828, 833-34

(4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett,* 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Green alleges that on March 23, 2012, defendant Pritts wrote a false disciplinary report on him charging him with rule violations. He claims that the following day, while under escort to a holding cell, he was assaulted by Pritts, Gordon, Ritchie, and a number of officers, resulting in a broken collar bone. ECF No. 1. Green claims that after he requested a copy of the video of the "assault by all the officers," Wedlock assigned to "lockdown" status for 250 days, moved him to a "highly restricted" area, forced him to send out his "excess" property, and fired from his institutional job. *Id.*

Defendants Gordon, Wedlock, and Ritchie[1] provide a different factual background concerning the March 2012 incidents. Employing information from the Internal Investigative Unit ("IIU") Report, they state that on March 23, 2012, Green failed to enter his cell before it closed after returning from outdoor recreation. ECF No. 29-1. When Pritts had Green report to the front of the wing so that he could speak with him, Green became verbally insolent and was cited by Pritts for various rule infractions (interfering with duties of staff, failure to follow authorized travel or unauthorized

---

[1]     Defendant Pritts has not been served. He resigned from his position in April of 2013. ECF No. 8. On July 17, 2014, court order was issued directing the U.S. Marshal to serve Pritts at the home address provided by the Office of the Attorney General. ECF No. 17. It does not appear that summons was ever issued.

loitering or delaying in any area or assignment, and any demonstration of insolence, disrespect or vulgar language). *Id.*, pgs. 11-12, & 20.[2]  Green was found guilty of the disrespect/vulgar language rule violation and not guilty of the other rule infractions. ECF No. 29-5. Adjustment Hearing Officer ("AHO") Sandstrom's adjustment decision was affirmed on appeal. *Id.*

Defendants further assert that on March 24, 2012, Green received another infraction from Pritts concerning the inmate's verbal and physical behavior toward Pritts during a "bar check." ECF No. 29-1, pgs. 11-12, 23 & 27.  Green was  charged with disruptive activity, the use of threatening language, disobeying a direct order, and demonstration of insolence, disrespect or vulgar language. *Id.*, pgs. 20-24.  He was found not guilty of the disobeying a direct order and guilty of the other three rule violations. ECF No. 29-6.    The AHO determination was affirmed on appeal. *Id.*

According to the record, on March 24, 2012, Defendant Gordon arrived at the cell and attempted to talk to Green, but placed Green in hand restraints due to his continued aggressiveness. Gordon and Pritts escorted Green to a holding cell and bent him over, facing forward to better control his behavior.  Defendants claim that while being escorted to another housing unit by Richie and Pritts, Green began yelling at inmates and began to pull away from correctional officers, requiring Richie and Pritts  to bend him over, facing forward, to gain control over him.  Correctional Dietary Officer Bond assisted with this escort until Green was placed in a "strip cage" and secured. ECF No. 29-1, pgs. 22, 28, 30 & 33-34.

The contemporaneous medical records indicate that on March 24, 2012, Green reported to Nurse Kristi Cortez that officers "tweaked" his left shoulder during an escort between housing units. ECF No. 29-2. Cortez noted that Green has a history of left shoulder pain and had rated his pain at a

---

[2]     The court references the electronic docketing pagination.

score of 9 out of 10 on the numeric pain scale.   The nurse noted that although tenderness and pain

was noted with movement, there was no swelling present.   The record shows that when seen one

month later, on April 30, 2012, for his "periodic physical exam," Green voiced no complaints.[3]  *Id.*

Defendant Ritchie affirms that on March 24, 2012, he assisted Pritts in escorting Green to

NBCI housing Unit 1.  He maintains that during this escort Green began to threaten Pritts and to

encourage other inmates to assault Pritts and Ritchie.  ECF No. 29-3, Ritchie Decl.  Ritchie insists

that during the escort Green attempted to pull free from Pritts and himself and he was escorted to

Housing Unit 1 bent at the waist and facing forward, so that he would be "more manageable" and less

of a threat to staff.  Ritchie affirms that upon arrival at Housing Unit 1, Green was placed into a strip

cage without further incident.  He affirms that he did not assault Green, nor did he witness anyone

else assault the inmate.  *Id.*

Defendant Gordon affirms that on March 24, 2012, Green was being belligerent and

aggressive towards tier officers.  He states that he placed hand restraints on Green and, along with

Pritts, began to escort him to a temporary holding cell during which time Green began to yell and

"jerk his body in a way that made him difficult to control."  ECF No. 29-4, Gordon Decl.  He

maintains that he and Pritts bent Green over facing forward, so that he was more manageable and

placed him into a holding cell without further incident.  Gordon denies that he or anyone else

assaulted Green or made any racial comments towards him.  *Id.*

In his declaration, defendant Wedlock denies forcing Green to send out his property, firing

Green from his institutional job, entering a finding in the adjustment decision-making process,

---

[3]       Indeed, an x-ray of Green's left shoulder conducted on or about July 9, 2012, following Green's
June 30, 2012 fall from a bunk, revealed no evidence of an acute fracture, dislocation or subluxation.  ECF No.

destroying an institutional video pertaining to Green or another inmate, or intimidating or harassing Green.[4]  ECF No. 29-7.

Defendants state that Green filed sixty-one administrative remedy procedure ("ARP") grievances at NBCI between December 8, 2008 and July 14, 2014.  ECF No. 29-8.  Specifically, on March 23, 2012, Green filed an ARP alleging that Pritts had filed a false report against him.   The grievance was dismissed for procedural reasons because the subject matter (disciplinary hearing procedures and decisions) was not subject to ARP review.  *See* NBCI-0907-12 at ECF No. 29-9. Defendants assert that as of June 26, 2014, Green filed five grievances with the Inmate Grievance Office ("IGO") since November of 2009, and only one grievance pertained to the allegations raised in this complaint.  Defendants alleges that Green filed an appeal with the IGO from his adjustment hearing pertaining to the March 24, 2012 adjustment conviction.  The IGO appeal was dismissed when Green failed to submit a copy of his disciplinary paperwork.  ECF No. 20-10, Oakley Decl. The Executive Director of the IGO affirms that Green's four other IGO appeals concern claims not raised in this action.  *Id.*

In his unverified opposition Green alleges that the actions of defendants "violate the intent of the legislature as well as the edicts passed down by the courts."  ECF No. 32.  He makes various legal statements regarding his right to be free from cruel and unusual punishment and the arbitrary and capricious acts of officers.  He states that he timely requested that the videos be preserved and they would have "refuted all statements made by any officer that I was in any way combative or

_____

29-2.
   [4]       NBCI Correctional Case Manager and IGO Coordinator Randy Durst maintains that because the alleged March 2012 incident is not listed on the "Use of Force" logs, tier video recordings were not archived and are not available for viewing. ECF No. 29-11 & 31-A.

aggressive." ECF No. 32. Finally, Green states that the statements written by the served defendants contradict the institutional rules and he was forced to send out his property. *Id.*

Green's claims regarding these Eighth Amendment violations are subject to the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Under the PLRA, prisoners must exhaust their administrative remedies before filing claims under § 1983. *See* 42 U.S.C. § 1997e(h) ("[T]he term 'prisoner' means any person…detained in any facility who is accused of…violations of criminal law…."). Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Green was required to exhaust his administrative remedies prior to filing this lawsuit. There is no dispute that Green filed an ARP regarding the incident at issue. Scott Oakley, Executive Director of the IGO, avers that Green filed an appeal grievance with the IGO regarding the March 24, 2012 incident, but the appeal was procedurally dismissed for non-compliance with requests for information. Green's original attachment seemingly portrays a situation where his outgoing mail to the IGO was not received. ECF No. 1 at pgs. 34-40.

Prison officials may not take unfair advantage of the exhaustion requirement and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *See Moore v. Bennett,* 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust

6

an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Id.* The burden of showing that administrative remedies were unavailable lies with the plaintiff. *See, e.g., Graham v. Gentry,* 413 F. Appx. 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing *Moore,* 517 F.3d at 725).

To be sure, if prison officials impede a prisoner's attempts to exhaust by denying that inmate the proper forms, by failing to educate the inmate on the grievance process, or by failing to respond to a proper grievance, a prisoner may be excused from exhaustion requirements. *See Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001). Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *See Moore,* 517 F. 3d at 725; *see also* Gary Proctor, *Ngo Excuses: Proving, Rebutting, and Excusing Failure to Exhaust Administrative Remedies in Prisoner Suits after Woodford v. Ngo and Jones v. Bock,* 31 Hamline L.Rev.471, 487–489 (2008).

In light of factual information presented to the court, there is some question as to whether Green's attempts to file grievances were impeded by prison personnel. Further, the court cannot say on the record before it that Green did not attempt to exhaust "available" administrative remedies. This court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the IIU. Thus, the court concludes that the exhaustion

7

requirement regarding the alleged excessive use of force is satisfied where, as here, the administrative procedure may be unavailable. *See generally Lynch v. Keionen et al.,* Civil Action No. GLR–13–998 (D. Md.), ECF No. 27 at 8; *Bogues v. McAlpine, et al.,* Civil Action No. CCB–11–463 (D. Md.), ECF No. 23, Ex. 4 at 23; *Oliver v. Harbough, et al.,* Civil Action No. ELH–11–996 (D. Md.), ECF No. 31 at 7–8.   In my view, Green's complaint is not subject to dismissal for a failure to exhaust administrative remedies.   As such, the court will consider the merits of his claims.

It is well-settled that the Eighth Amendment's prohibition against "cruel and unusual punishment" prohibits prison officials from inflicting pain unnecessarily and wantonly against prisoners. *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Hill v. Crum,* 727 F.3d 312, 317 (4th Cir. 2013) (It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim.) "An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008). Specifically, the court must decide "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir.1996). Where, as here, a prisoner makes an excessive force claim, the court's subjective component analysis "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (citations omitted); *see also Williams,* 77 F.3d at 761.

This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety

8

of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U. S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010). It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim. *See Hill*, 727 F.3d at 320-321. The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* Not every malevolent touch by a prison guard, however, gives rise to a federal cause of action for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *Id.* at 37.

Viewing the facts in a light most favorable to Green, he has been challenged to show by verified materials that correctional officers maliciously applied force. He has failed to so do. Even with his dispute as to his combativeness and aggression, Green never really provides the specific background of the alleged assault so as to refute defendants' declarations. Indeed, his stated injury, a broken collarbone, is not illustrated in the record. He experienced a "slight tweak" of the shoulder, but raised no further complaints regarding his shoulder. His injury is more characteristic of minimal force used to escort him to another housing unit.

If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Green's opposition to defendants' motion fails to create a "genuine" issue of "material" fact because he does not

materially contradict the verified records offered by defendants "such that a reasonable jury could return a verdict" in his favor. *Anderson,* 477 U.S. at 248.

For the aforementioned reasons, defendants Gordon, Wedlock and Ritchie's motion, construed as a motion for summary judgment, shall be GRANTED.[5]   Judgment shall be entered in favor of defendants Gordon, Wedlock and Ritchie.[6]   A separate Order follows.

Date: _____*8/5/15*_____                    _____
                                             J. Frederick Motz
                                             United States District Judge

---

[5]     To the extent that Green alleges that defendant Pritts wrote a false adjustment report and he was subject to verbal abuse and retaliation, he has failed to set out colorable constitution claims. See *Freeman v. Rideout,* 808 F.2d 949, 951 (2nd Cir.1986) (no constitutionally protected right from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest); *Wilson v. McKeller,* 254 Fed. Appx. 960, 961 (4th Cir. 2007) (rejecting inmate's claim regarding guard's use of racial slur, because mere threats or verbal abuse do not state a cognizable claim under § 1983). Moreover, it is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights. *See American Civ. Liberties Union v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993). However, in order to state a cognizable retaliation claim under 42 U.S.C. § 1983, an inmate must also "allege sufficient facts to warrant concern that the alleged retaliation have a chilling effect on the exercise of the constitutional right and show that he suffered more than *de minimis* inconvenience." *Goodman v. Smith,* 58 Fed. Appx. 36, 38 (4th Cir. 2003) (citing *Wicomico,* 999 F.2d at 785–86). The inmate must also point to specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Id.* (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (emphasis added). Further, Green's allegation that he was forced to send his property out of NBCI, fails to state a Fourteenth Amendment claim. *See Parratt v. Taylor,* 451 U.S. 527, 542–44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986) (In the case of lost or stolen property, sufficient due process is afforded an inmate if he has access to an adequate post-deprivation remedy.) The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy. *See Juncker v. Tinney,* 549 F.Supp. 574, 579 (D. Md. 1982).

[6]     The court, having found no Eighth Amendment violation, will dismiss the complaint against defendant Pritts.